## MOSES GUILD et al. versus HORATIO LEONARD.

A. and B. being the only copartners in one company, and being likewise partners with other persons in two other companies, A. made a deed poll to B., of all the grantor's interest in certain real estate and in the personal property of the three companies, the deed being nominally for a pecuniary consideration and containing a covenant that the grantee would indemnify the grantor against all the debts due from the three companies. The deed was accepted by the grantee, but was not executed by him. It was *held*, that as the grantee would be liable in assumpsit, as upon an implied promise to pay the creditors and indemnify the grantor, this was a valid consideration for the deed, as against partnership creditors of A. and B.

So B. having afterwards, by deed poll, conveyed all his interest in the same real estate and in the property of one of the three companies, " in consideration of one dollar paid by the grantees, and they becoming obligated to pay the debts of the same company," and the deed having been accepted by the grantees, though not executed by them, and they having paid those debts, it was *held*, that the deed was founded on a valid consideration as against partnership creditors of A. & B.

THIS was an action on the case, against the sheriff of the county of Bristol, for a default of one of his deputies. The plaintiffs were Moses Guild, Samuel Guild, Milton Barrows and Milton Barrows junior.

At the trial, before *Morton* J., it appeared that, previously to June 1829, Palemon Walcott and Bennett Whipple were copartners under the name of Walcott & Whipple, and also members of the firm of Bennett Whipple & Co., and of the

Lanesville Manufacturing Company, a voluntary association consisting, besides themselves, of Milton Barrows, one of the plaintiffs, and Henry Marchant ; that prior to the 15th of June, 1829, Walcott & Whipple had conveyed their interest in certain real estate, cotton mills, &c. to Elisha Waterman, in mortgage, which mortgage was still in full force ; that at the time when this mortgage was made, Walcott was the owner of five fifteenths of the property, and Whipple of four fifteenths ; and that they were also interested in the same proportion, in the Lanesville Manufacturing Company.

On the 15th of June, 1829, Walcott, by a deed poll, conveyed all his estate and interest in the mortgaged estate, including the debts and personal property of every description belonging to Walcott & Whipple, Bennet Whipple & Co. and the Lanesville Manufacturing Company, to Whipple, the consideration named being the sum of $500. After describing the property, the deed proceeded as follows : " And I, the said Bennett Whipple, my heirs and assigns, do covenant and agree with the said Palemon Walcott, his heirs and assigns, to bear the said Palemon Walcott harmless from all the debts, dues and demands that may be due from either of the above named firms or companies, the same being a part of the consideration of the above granted and bargained premises." This deed was not executed by Whipple. On the day of its date, Walcott was in failing circumstances. Neither the sum of $500, nor any other sum, was paid as a consideration for the conveyance. The deed was recorded on the 18th of June, 1829.

On the 16th of December, 1829, Whipple, Milton Barrows and Marchant, describing themselves as the Lanesville Manufacturing Company, conveyed all their interest in the property above mentioned, to Moses and Samuel Guild, two of the plaintiffs, and to one Beckwith, in mortgage, for the purpose of securing them against any liabilities which they had assumed or might assume, for the Lanesville Manufacturing Company, and also for any advances which they might make to it. The consideration named in this mortgage was $30,000.

Previously to April, 1830, certain creditors of Walcott and Whipple attached all their interest in the real estate described in these several conveyances.

On the 22d of April, 1830, Whipple, being in failing circumstances, conveyed to Moses and Samuel Guild and Milton Barrows junior, four fifteenths of all the real estate, " in consideration of one dollar paid me by " the grantees, " and they becoming obligated to pay four fifteenths of the Lanesville Manufacturing Company's debts ; " but no consideration was in fact paid, and no obligation given by the grantees to pay any part of such debts, they then being members of the company.

On the 15th of January, 1831, Whipple conveyed to the same grantees, who were still members of the Lanesville Manufacturing Company, one fifteenth of the same property, the consideration expressed being the same as in the last mentioned deed. On the same day Whipple conveyed to the four plaintiffs, four fifteenths of the real estate and all his interest in the property, of every description, belonging to the Lanesville Manufacturing Company, to be held by them in the following proportions, three fifteenths by Milton Barrows, and one fifteenth by the other plaintiffs. The consideration was expressed in the same words as in the two last mentioned deeds, substituting $50 for $1. No written obligation was given by the plaintiffs, or any of them, to Whipple or Walcott, to pay any part of the debts of the Lanesville Manufacturing Company ; nor was any evidence offered of a parol promise to that effect.

The plaintiffs produced notes and drafts of the Lanesville Manufacturing Company, which were in their hands, cancelled, and which had been given by that company before the date of the two last mentioned deeds, and upon which they were liable on the 15th of January, 1831, to the amount of between $25,000 and $28,000.

No evidence was given as to the amount of the debts of the Lanesville Manufacturing Company on the 15th of January, 1831, excepting that Whipple stated his impression to be, that it was $25,000 or $30,000. Whipple further testified, that he knew of no debts outstanding against that association, but that he had no knowledge whether the debts were paid before or after February, 1832.

Alfred Barrows and Whipple testified, that Milton Barrows was present when the deed from Walcott to Whipple was ex-

ecuted, and that they both believed that the deed was read aloud in his presence.

On the 6th of February, 1832, the right of Walcott & Whipple to redeem the real estate which had been attached before April 1830, by two of their creditors, was sold in order to satisfy two executions issued in favor of those two creditors, and a balance of the proceeds remained in the officer's hands. On the 4th of February, 1832, certain persons, who were *bonâ fide* creditors of Walcott & Whipple at the time of the conveyances before mentioned, attached this right of redemption, and delivered their writs to the officer holding such executions, who was the deputy sheriff, for whose doings this action was brought against the defendant. This deputy returned on those writs an attachment of the equity of redemption above mentioned ; and the actions were duly entered and continued for judgment.

On the 23d of March, 1832, the plaintiffs demanded of the deputy sheriff the balance of the proceeds remaining in his hands after deducting the amount of the executions before mentioned and fees, he having been notified, before the last attachments, of the claims of the plaintiffs.

No evidence was given of the value of the personal estate mentioned in any of the conveyances.

The defendant contended, that upon these facts, this action could not be maintained.

A verdict was entered by consent for the plaintiffs, subject to the opinion of the Court.

The case was argued in writing.

*Coffin* and *Cushman*, for the plaintiffs, cited to the point, that it was not necessary that the deed from Walcott to Whipple should have been executed by Whipple, he having bound himself, by his acceptance of the deed, to indemnify the grantor against his liability to the creditors of the several firms mentioned therein, *Goodwin* v. *Gilbert*, 9 Mass. R. 510 ; to the point, that the object of Whipple in making the conveyances to the plaintiffs, was merely to pay a class of creditors to the whole extent of their claims, and, therefore, that such conveyances were not fraudulent, *Estwick* v. *Caillaud*, 5 T. R. 420 ; *Harrison* v. *Trustees of Phillips Academy*, 12 Mass. R

462 ; *Bridge* v. *Eggleston*, 14 Mass. 247 ; that there was a sufficient consideration for these deeds, *Eaton* v. *Campbell*, 7 Pick. 10 ; *Harrison* v. *Trustees of Phillips Academy*, 12 Mass. R. 462 ; and that it was not enough to prove that Whipple intended, by these conveyances, to delay or defeat his creditors by preventing their attachment, but it must be shown that both parties participated in the fraud, *Foster* v. *Hall*, 12 Pick. 98.

*Warren* and *Darling*, for the defendant, cited to the point, that if the payment of the creditors of Walcott & Whipple was to be considered a condition precedent, to which payment both Whipple and the plaintiffs, as his assigns, were bound, then the debts of Walcott & Whipple must be paid before the title could vest in the plaintiffs, 1 Bac. Abr. *Condition*, 652 ; 2 Bl. Comm. 154 ; Co. Litt. 217 ; and that as the several deeds by which this property had been conveyed were substantially conveyances in trust for the payment of debts, and no creditor had become a party thereto, and no consideration had been paid, they were voluntary and void, 2 Powell on Mortg. 656, 657, 658, note, 659 ; *Brewer* v. *Pitkin*, 11 Pick. 298 ; *Ward* v. *Lamson*, 6 Pick. 358 ; *Russell* v. *Woodward*, 10 Pick. 408 ; *Widgery* v. *Haskell*, 5 Mass. R. 144 ; *Stevens* v *Bell*, 6 Mass. R. 344 ; 3 Bac. Abr. 312.

PUTNAM J. delivered the opinion of the Court. The plaintiffs claim a sum of money in the defendant's hands, being a balance arising from the sale of a right in equity to redeem certain real estate, sold as belonging to Walcott and Whipple, to satisfy two executions in favor of their creditors. The sale was made by a deputy of the defendant. The plaintiffs' right is attempted to be maintained, under the deeds of Walcott and Whipple.

The first question to be considered is, whether the deed from Walcott to Whipple, made on the 15th of June, 1829, is, upon the facts stated in the report, to be adjudged fraudulent against creditors. It is a deed poll. It purports to have been made for the consideration of $ 500, and contains an agreement on the part of the grantee, to save the grantor harmless from the debts due from the parties (who were partners,) from Bennett Whipple & Co., of Cumberland, and from the

Lanesville Manufacturing Company. The case finds that the $ 500 were not paid, and that the grantee did not execute the deed. And the deed has no *habendum.*

The objection is, that a valid consideration has not been proved. But the grantee accepted the deed upon the terms therein set forth; and he would be liable in an action of assumpsit to pay the creditors of the grantor and indemify him against his liabilities, according to those terms. The law would imply such a promise and undertaking by the grantee, notwithstanding he did not execute the deed. Such a promise would be legally implied from his acceptance of the deed which contained the undertaking or stipulation of the grantee. He must take the estate accordingly. *Goodwin* v. *Gilbert*, 9 Mass R. 510. And there are facts stated in the case, from which a jury might infer that the grantee went on and paid the debts according to the intent of the parties. The estate conveyed being subject to a mortgage, the grantee took a right in equity to redeem the same.

The right which Whipple acquired, was conveyed to the plaintiffs in virtue of the deeds of the 23d of April, 1830, and of the 15th of January, 1831; but subject to the attachments made by the creditors of Walcott and Whipple before April, 1830; pursuant to which the two executions, issued upon judgments recovered by those creditors, have been properly levied and satisfied by the sale of the equity. But those deeds were good against the attachments which were subsequently made. And they are to be maintained upon the same grounds as are stated before as sufficient to support the deed from Walcott to Whipple. Nothing appears in the facts reported, from which these deeds are to be adjudged fraudulent as to creditors. They were not made to delay or defeat creditors, but to prefer some creditors over others; which was a lawful and not a fraudulent intent. And the debts due to such preferred creditors were all paid before February, 1832, when the attachment was made by the creditors of Walcott and Whipple, for whom the defendant makes this defence.

We are all of opinion, that the plaintiffs are entitled to recover of the defendant the proceeds of the sale of the right in equity, &c. remaining in his hands, after deducting the amount

of the two executions and fees described in the plaintiffs' decla- <span style="float:right">Guild<br>*v.*<br>Leonard.</span>
ration, with interest from the 23d of March, 1832, when the
plaintiffs made their demand.